UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 00 CR 675-1 |
| DAVID SANDERS, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Defendant, David Sanders, who is charged with employing, using, persuading, inducing and enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct in violation of 18 U.S.C. § 2251(a), has moved for an evidentiary hearing to review *de novo* the administrative decision of the United States Bureau of Prisons ("BOP") to involuntarily administer psychotropic drugs to him in order to render him competent to stand trial. Defendant also moves for appointment of a defense medical expert witness and to have the administrative record of the BOP filed under seal. The court grants defendant's motions as set forth below.

## BACKGROUND

On July 25, 2001, the court found defendant incompetent to stand trial and ordered he be committed to the custody of the BOP, pursuant to 18 U.S.C. § 4241(d), to undergo a psychiatric evaluation to determine whether there was a substantial probability that within the foreseeable future he would attain the capacity to permit a trial to proceed. In an evaluation conducted on November 30, 2001, by Dr. Robert Lucking, a psychiatrist, and Dr. Angela Weaver, a

psychologist, at Federal Medical Center, Butner, North Carolina ("FMC Butner"), they concluded that while defendant was able to understand the nature and consequences of the proceedings against him, he was not able to assist properly in his defense. Subsequently, an administrative hearing was held pursuant to 28 C.F.R § 549.43,[1] at which the hearing officer concluded that defendant was suffering from a mental illness and that involuntary medication was necessary to treat his illness and restore him to competency for trial. Defendant appealed the decision to the Warden, FMC Butner, and the appeal was denied. Defendant seeks a judicial hearing on the decision to medicate him against his will.

---

[1] The regulation addresses involuntary psychiatric treatment and medication, and provides for:

- 24-hour advance written notice to the inmate of the date, time, place and purpose of the hearing and the reasons for the medication proposal;
- The right to assistance of a staff representative, to appear at the hearing, and present evidence and witnesses;
- The hearing is to be conducted by a psychiatrist who is not currently involved with the inmate's diagnosis or treatment;
- The treating psychiatrist must appear at the hearing and present clinical data and background data relative to the need for medication;
- The psychiatrist conducting the hearing shall determine whether treatment or psychotropic medication is necessary to make the inmate competent for trial or because the inmate is a danger to himself or others, is gravely disabled or is unable to function in prison population;
- A written report by the psychiatrist to the inmate regarding the decision;
- The opportunity to appeal, in writing, the decision within 24 hours to the mental health administrator, who will review the appeal within 24 hours of the appeal to ensure that the inmate received all of the necessary procedural protections and that the justification for involuntary treatment or medication was appropriate.
- If the inmate appeals, no medication will be administered until the administrator renders a decision (absent an emergency).
- The inmate may request the assistance of the staff representative in preparing the appeal.
- A psychiatrist, other than the attending psychiatrist, provides follow-up monitoring of the inmate's treatment or medication at least once every 30 days after the hearing, which is documented in a medial record.

*See* 28 C.F.R. § 549.43.

# DISCUSSION

Defendant argues that in a case, such as his, involving the involuntary medication of an inmate in order to render him competent to stand trial, the Due Process Clause of the Fifth Amendment requires that the court hold a judicial hearing (as opposed to merely an administrative proceeding by physicians), and that in that judicial proceeding, the court apply a strict-scrutiny standard of review and require the government prove its case by clear and convincing evidence as the Sixth Circuit held in *United States* v. *Brandon*, 158 F.3d 947 (6th Cir. 1998). The government responds that a judicial hearing is not required (this argument is made in a footnote), or assuming that it is, the court should apply a somewhat more flexible standard of review utilized by the Second, Eighth and District of Columbia circuits. *See United States* v. *Gomes*, 289 F.3d 71 (2d Cir. 2002); *United States* v. *Sell*, 282 F.3d 560 (8th Cir. 2002); *United States* v. *Weston*, 255 F.3d 873 (D.C. Cir. 2001). The government also argues that this court need not decide the burden of proof issue, *i.e.* whether it must prove its case by clear and convincing evidence or the preponderance of the evidence, since its evidence will meet either burden.

As the court understands the parties' arguments and pertinent case law, defendant's request for a judicial hearing and clear and convincing burden of proof standard implicate procedural due process concerns, whereas the particular standard of review (strict-scrutiny, etc.) question involves substantive due process concerns. Thus, for sake of clarity, the court addresses the procedural and substantive due process issues separately.

A. <u>Procedural Due Process – Judicial Hearing/Standard of Proof</u>

Defendant argues that the Due Process Clause of the Fifth Amendment requires a judicial hearing. There are no controlling cases in the Supreme Court or Seventh Circuit on the issue. Defendant relies on *Brandon* in which the Sixth Circuit reversed the district court's denial of judicial evidentiary hearing on the ground that an administrative hearing conducted pursuant to the same regulation at issue here, 28 C.F.R. § 549.43 (*see supra* note 1), would suffice to protect defendant's due process rights. *See Brandon*, 158 F.3d at 953-55.

What procedural due process protections are due must be determined by reference to the rights and interests at stake in a particular case. *Washington v. Harper*, 494 U.S. 210, 229 (1990). The court considers the individual's private interests, the government's interests, and the adequacy of the procedural requirements. *See id.* (citing, *inter alia*, *Mathews v. Eldridge*, 424 U.S. 319, 355 (1976)). With respect to private interests, it is well-recognized that a defendant has a substantial liberty interest in freedom from bodily intrusion. *Id.* at 229-30 (noting that although the purpose of the medication is to alter the chemical balance of the brain in order to restore cognitive abilities, producing benefits for the patient, the medication may have severe and irreversible side effects); *see also Riggins v. Nevada*, 504 U.S. 127, 132 (1992). A defendant's Sixth Amendment rights to a fair trial may also be implicated, *Riggins*, 504 U.S. at 137 (noting that the side effects of medication can impact defendant's outward appearance, the content of his ability to follow proceedings, and his communication with counsel), and some courts have recognized implications for a defendant's First Amendment rights to communicate one's ideas. *See Bee v. Greaves*, 744 F.2d 1387, 1393 (10th Cir. 1984); *Brandon*, 158 F.3d at 953. With respect to the government's interest, the Supreme Court has recognized, as a general

4

matter, that the ability to bring a defendant to trial is "fundamental to the scheme of 'ordered liberty.'" *Riggins*, 504 U.S. at 135-36 (internal quotation to *Illinois* v. *Allen*, 397 U.S. 337, 347 (1970) (Brennan, J., concurring)).

The court concludes that because the key determinations involved in a decision to medicate a defendant against his will in order to render him competent to stand trial are primarily legal, not medical, a judicial hearing is required. Unlike *Harper*, where the government sought to medicate a defendant inmate solely for health reasons so that he could function in the prison setting (*i.e.*, because he was gravely disabled or was a harm to himself or others) and, as such, an administrative hearing at which physicians make the determination about medication, is sufficient procedural protection, in the instant case the government seeks to medicate defendant solely for prosecution purposes. *Cf. Riggins*, 504 U.S. at 139 (Kennedy, J., concurring) (noting that an order to medicate a defendant for trial is related to the criminal proceeding itself). In that context, the decision to medicate requires that the decisonmaker consider the medication's potential prejudicial effect on his trial rights and courts, not physicians, are better equipped to make such determinations, albeit with the aid of medical evidence. Furthermore, the burden of a judicial hearing is not too cumbersome or a waste of judicial resources in light of the substantial risk to a defendant's interests that could ensue by allowing persons not trained in the law to make these determinations. *See Brandon*, 158 F.3d at 955; *United States* v. *Sanchez-Hurtado*, 90 F. Supp. 2d 1049, 1054-55 (S.D. Cal. 1999) (following *Brandon*); *Gomes*, 289 F.3d at 77 (Apparently leaving untouched the district court's holding that "involuntary medication could not be ordered without first holding a judicial hearing."). Thus, the court holds that a judicial

evidentiary hearing is required before the government may medicate a defendant against his will in order to render him competent to stand trial.

Moreover, the court concludes, as did the court in *Brandon*, that because of "the risk of error and possible harm involved in deciding whether to forcibly medicate an incompetent, non-dangerous pretrial detainee are . . . so substantial," the government is required to prove its case by clear and convincing evidence. *Brandon*, 158 F.3d at 960-61 (reasoning that a higher burden of proof is required in order to preserve fundamental fairness in government-initiated proceedings, which threaten significant deprivations of liberty). Indeed, the Supreme Court has hinted that "clear and convincing" is the standard of proof, *see Riggins*, 504 U.S. at 135 (citing *Addington v. Texas*, 441 U.S. 418 (1979)), and the circuit courts have required application of such a burden. *See Gomes*, 289 F.3d at 82; *Sell*, 282 F.3d at 567; *cf. Weston*, 255 F.3d at 880, n. 5 (noting that the district court held the parties to such burden).

B.  Substantive Due Process - Standard of Review

The next question is what standard of review the district court must apply in a judicial hearing (and concomitantly what elements the government must prove by clear and convincing evidence), in order to satisfy substantive due process requirements. The "substantive issue involves a definition of th[e] protected constitutional interest, as well as identification of the conditions under which competing state interests might outweigh it." *Harper*, 494 U.S. at 220 (quoting *Mills v. Rogers*, 457 U.S. 291, 299 (1982)). In *Riggins*, a case involving a defendant's motion to cease medication during trial, the Supreme Court left open the question regarding what standard a court must apply in determining when the government's interest overrides the inmate's such that involuntary medication is permissible. Recognizing that there might be a

substantial probability of trial prejudice to the defendant, the Court suggested that the administration of the medication must not only be medically appropriate, but also "necessary to accomplish an essential state policy." *Riggins*, 504 U.S. at 137-38. This would entail a showing by the government that it "could not obtain an adjudication of . . . guilt or innocence by using less intrusive means." *Id.* at 135. The Court did state (in response to the dissent), however, that it was not adopting "a standard of strict scrutiny" and had no occasion to finally prescribe substantive standards since the district court had not made any findings of the need for forced medication or reasonable alternatives. *Id.* at 136.

The Sixth Circuit in *Brandon* applied a strict-scrutiny test, reasoning that because a defendant has a fundamental right to be free from bodily intrusion and because the government's interest does not involve matters of prison administration (as in *Harper*) but relates solely to trial administration, the government must demonstrate that forced medication is "narrowly tailored to a compelling interest." *Brandon*, 158 F.3d at 957; *see also Bee*, 744 F.2d at 1395 (pre-*Riggins* case applying strict-scrutiny test). More recently, the Second, Eighth and District of Columbia circuits have interpreted *Riggins* as favoring a heightened, but not strict, scrutiny test. *See Gomes*, 289 F.3d at 82; *Sell*, 282 F.3d at 567; *Weston*, 255 F.3d at 880.

For example, the Second Circuit in *Gomes* recognized a defendant's interest in avoiding bodily intrusion under the Fourteenth Amendment's Due Process Clause, Sixth Amendment rights to a fair trial and, perhaps, First Amendment rights to communicate ideas, but also noted the government's no less substantial interest in bringing a criminal defendant to trial. *Gomes*, 289 F.3d at 80. Indeed, it noted that the government's interest has been characterized as "fundamental," *see id.* (citing *Allen*, 397 U.S. at 347 (Brennan, J., concurring)), and "essential."

7

*Id.* at 80-81 (citing *Sell*, 282 F.3d at 568; *Weston*, 255 F.3d at 880). However, noting that the strict-scrutiny approach is unduly restrictive because it has come to be considered "fatal in fact," the Second Circuit concluded that a more flexible regime, which accommodates both the defendant's health interests and fair trial rights and the government's interest in prosecution would be consistent with constitutional requirements. *Id.* at 82-83.[2] The court finds this reasoning persuasive and also adopts the factors set forth in these cases that the government must prove and the court must find (1) an essential interest that outweighs the individual's interest in remaining free from medication; (2) that treatment and or medication is medically appropriate and (3) is necessary to accomplish the government's essential interest, *i.e.*, there are no less intrusive means of fulfilling its interest. *See Sell*, 282 F.3d at 567; *Gomes*, 289 F.3d at 85-87.

With respect to the government's interest, while the government generally has an essential interest in bringing defendants to trial, the court must still find it is essential in each case. *Gomes*, 289 F.3d at 85. For example, the court might consider whether the crime is broadly harmful, such as drug-trafficking or a scheme to defraud health care, whether the crime is classified as a felony and carries a substantial penalty, and whether defendant poses a danger to society based on the charged conduct, his past conduct or both. *Id.* With respect to the medically appropriate determination, the court should consider whether the medication is likely to render the defendant competent, whether the likelihood and gravity of side effects would overwhelm its

---

[2] The Second Circuit in *Gomes* also observed that the concerns Justice Kennedy raised in his *Riggins* concurrence (which suggested the government would have a difficult time proving the need for involuntary medication in light of the then-known side effects of medication), have lessened since *Riggins* due to advances in antipsychotic medication; in any event, it held that the decision to medicate a defendant against his will must be decided on a case-by-case basis. *Gomes*, 289 F.3d at 83-84.

8

benefits, and whether the medication is in the best medical interests of the defendant. *Sell*, 282 F.3d at 567; *Gomes*, 289 F.3d at 86.

With respect to the necessity to medicate, the court should find both that the prescribed medication is likely to restore defendant to competency without producing undue side effects and that the government could not obtain an adjudication of the defendant's guilt or innocence by less intrusive means. *Gomes*, 289 F.3d at 87. In that vein, however, the court need not find the medication is "absolutely certain to have the desired effect." *Id.* This is so because of the government's important interest in prosecution and because the court may continue to monitor defendant's ability to participate as trial proceeds, when the actual effects of the medication are shown. *Id.* at 87; *Sell*, 282 F.3d at 572 (noting that the willingness of the district court to re-examine defendant's Sixth Amendment claim after the medication regime has begun will aid in ensuring a fair trial). Thus, the judicial hearing will be governed by the above discussed standards and burdens of proof.

Defendant also requests authorization for appointment of a defense medical expert witness for the purpose of providing rebuttal medical evidence and to the have the administrative record of the BOP filed under seal. The government does not object to either of these motions, and they are granted.

ENTER: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: July 1, 2002

9